IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION


BRIAN REID,

                    Plaintiff,

v.                                                          CIVIL ACTION NO.   2:21-cv-00647

WEST VIRGINIA STATE POLICE, et al.,

                    Defendants.


MEMORANDUM OPINION AND ORDER


The Court has reviewed the *Defendants' Motion for Summary Judgment* (Document 40),
the *Memorandum of Law in Support of Defendants' Motion for Summary Judgment* (Document
41), the *Plaintiff's Response to Defendants' Memorandum of Law in Support of Defendant's
Motion for Summary Judgment* (Document 42), and the *Defendants' Reply to Plaintiff's Response
to Defendants' Motion for Summary Judgment* (Document 43), as well as all attached exhibits.
For the reasons stated herein, the Court finds that the motion should be granted in part and denied
in part.

FACTS[1]

On August 7, 2020, Corporal Aaron Wilson of the West Virginia State Police was
participating in aerial searches for marijuana in Kanawha County.   Troopers in a helicopter

---

[1] The factual summary contained herein resolves factual disputes in favor of the Plaintiff as the non-moving party.
Mr. Reid and Cpl. Wilson provided differing accounts of their encounter and of the use of force.   As there is no video
or other evidence to definitively corroborate either account, the Court must accept Mr. Reid's account for purposes of
this motion for summary judgment.

searched for marijuana and sent coordinates to Cpl. Wilson or others on the ground.   Plaintiff

Brian Reid noticed the helicopter flying very low over his house.   Cpl. Wilson learned that officers

in the helicopter had identified marijuana at Mr. Reid's residence.   Cpl. Wilson entered his yard,

enclosed by a privacy fence, and began pulling up marijuana plants.   Mr. Reid came outside to

see what Cpl. Wilson was doing.   Cpl. Wilson asked if he had anything related to marijuana

cultivation in his residence, and Mr. Reid agreed to let him look around inside.   Trooper

Thompson and Deputy Brill were also present.

Mr. Reid escorted Cpl. Wilson and the other officers into a lower-level apartment that was

used for the security and IT related business he operated with his father, who lived in a house on

the same property.   Cpl. Wilson did not see anything suspicious in that apartment.   He asked for

Mr. Reid's identification.   Mr. Reid went upstairs to an apartment that was his residence on the

second floor to get his ID, and Cpl. Wilson followed him.   Cpl. Wilson saw a closet with nylon

tents that Mr. Reid used to grow marijuana, and reported smelling marijuana, although Mr. Reid

contends that there was no detectable odor in the apartment.   Mr. Reid was in the living room,

near his couch.   Believing that Cpl. Wilson was about to arrest him, Mr. Reid, who collects rocks

and minerals, reached for a small crystal that provides him with comfort and positive energy.   The

crystal resembles crystal methamphetamine.   Cpl. Wilson grabbed Mr. Reid's hand or wrist.   Mr.

Reid testified that Cpl. Wilson did not give any verbal instruction.[2]   Mr. Reid told him that the

crystal was not anything illegal.   Mr. Reid testified that Deputy Brill was inside the apartment

---

[2] Cpl. Wilson indicated in his deposition that he directed Mr. Reid to drop the crystal, and that Mr. Reid appeared to be bringing it toward his mouth, causing him to believe that Mr. Reid was about to ingest what appeared to be a controlled substance.   His police report states that Mr. Reid became uncooperative when confronted with his indoor marijuana cultivation and resisted when Cpl. Wilson attempted to take the crystal, leading Cpl. Wilson to "aggressively" take him to the floor.

facing him, while Cpl. Wilson was behind him.[3]   He remained cooperative and was never aggressive or non-compliant with the officers.

Cpl. Wilson, who weighed approximately 250 pounds, slammed Mr. Reid, who weighed approximately 100 pounds, face-down onto the floor.   Mr. Reid hit the couch, then the floor, and suffered a broken jaw and severe carpet-burn on his arm.   Cpl. Wilson placed his knee on Mr. Reid's back, causing him to struggle to catch his breath, and punched him repeatedly in the ribs and torso before handcuffing him behind his back.   After he was handcuffed, Cpl. Wilson ceased punching him.

Mr. Reid immediately complained that he believed his jaw was broken.[4]   He testified that he was coughing up blood.   One of the officers told him he could sit up.   Cpl. Wilson left to obtain a search warrant, and Officer Thompson stayed with Mr. Reid in the apartment.   Mr. Reid continued to complain about his jaw, requesting medical attention, but the officers detained him in the apartment for 5-7 hours while obtaining and executing the search warrant.   They took him to the police station, where Cpl. Jarvis spent about an hour and a half processing and booking him. Cpl. Wilson then took him to South Central Regional Jail.   Mr. Reid told Cpl. Wilson that he needed to go to the hospital because of his jaw.   He continued to request medical assistance from jail staff.   Although a nurse saw him and administered a vaccine as he was being checked in to the jail, he did not receive any medical care related to his broken jaw until after his release the next day.

---

[3] Cpl. Wilson testified that he was the only officer in the apartment at this point, although he later noted that he realized the other officers were present after he had handcuffed Mr. Reid and was unsure of when they had entered the apartment.

[4] Cpl. Wilson testified that Mr. Reid did not complain of an injury to his jaw, and he learned of it only when his attorney mentioned it during a preliminary hearing.

Following his arraignment, Mr. Reid's sister picked him up and took him to the emergency room, where he was admitted.   He remained in the hospital for about two days.   He received surgery to repair his jaw with metal implants, and had to return multiple times for follow-up, including getting hardware removed.   He also requires regular follow-up care with a dentist.   The injury has resulted in ongoing sensitivity and pain in his jaw.

The Court previously dismissed some of the claims alleged in the complaint.   The claims that remain pending are battery, excessive force in violation of the United States Constitution pursuant to 42 U.S.C. § 1983, and vicarious liability as to the State Police.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case.   *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.   *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a); *Celotex Corp.*,

4

477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party.  *Hoschar*, 739 F.3d at 169.   However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor."  *Anderson*, 477 U.S. at 256.   "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action."  *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986).   If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250.   If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322–23.

## QUALIFIED IMMUNITY

Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties.  *See, e.g., Pearson v. Callahan*, 555

U.S. 223, 231–32 (2009).   Defendants asserting a qualified immunity defense first bear the burden

of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the

defendant's duties."   *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks

omitted.)   The defense of qualified immunity is available unless the official "knew or reasonably

should have known that the action he took within his sphere of official responsibility would violate

the constitutional rights of the plaintiff."   *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982) (internal

emphases omitted).   Officials are protected even if they make reasonable mistakes of fact or law,

so long as they do not violate a clearly established statutory or constitutional right.   *Pearson*, 555

U.S. at 231–32.   "A constitutional right is 'clearly established' when its contours are sufficiently

clear that a reasonable official would understand that what he is doing violates that right."   *Cooper*

*v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

The reasonableness analysis is objective.   Courts must "examine[] only the actions at issue

and measure[] them against what a reasonable police officer would do under the circumstances,"

but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the

incident."   *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994).   "[T]he officer's subjective

state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective

facts of the incident in question are."   *Id.* at 173.

## DISCUSSION

The Defendants argue that the Plaintiff's account in his deposition differs substantially

from the allegations in his complaint, highlighting that he alleged that Cpl. Wilson punched him

in the face, breaking his jaw, but testified in his deposition that he did not recall Cpl. Wilson

punching him in the face at all.   They argue that "Corporal Wilson's decision to use a moderate

6

degree of force to prevent him from potentially destroying what Corporal Wilson's many years of law enforcement experience justifiably led him to assume was methamphetamine was wholly reasonable and appropriate under the circumstances."   (Def.s' Mem. at 9.)   They emphasize that Cpl. Wilson's actions must be evaluated from the perspective of a reasonable officer on the scene, not with the benefit of hindsight.   They further argue that the Plaintiff has no evidence to support any claim against Trooper Thompson or Cpl. Jarvis, as they were not present during Cpl. Wilson's use of force.   Finally, they contend that the State is entitled to summary judgment because none of the underlying claims should survive to support vicarious liability.

The Plaintiff points out that he testified that he did not resist, either physically or verbally, and was denied medical attention the entire time he was in custody.   He emphasizes that Cpl. Wilson gave no verbal commands or warnings prior to his use of force.   He argues that the offense he was suspected of was not severe, that he posed no threat to the safety of officers, and that he did not resist.   He contends that a "250-pound man could have easily subdued a 93-pound man without punching him and taking him to the ground in such a violent manner that his jaw was broken."   (Pl.'s Resp. at 4.)   The Plaintiff also asserts that his claims against the State Police remain viable because the State Police can be held vicariously liable for actions of troopers within the scope of their employment.

The Fourth Amendment provides a right to be free from unreasonable seizures, including the use of excessive force.   *Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003).   "The question is whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force."   *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001).   "In the context of an ongoing police encounter . . . we focus on the moment that the force

is employed." *Est. of Jones by Jones v. City of Martinsburg, W. Virginia*, 961 F.3d 661, 668 (4th

Cir. 2020), *as amended* (June 10, 2020) (internal quotation marks omitted).   The Fourth Circuit

has explained, in the context of a qualified immunity defense to excessive force allegations, that

"the objective reasonableness of force [should be viewed] in full context, with an eye toward the

proportionality of the force in light of all the circumstances."   *Rowland*, 41 F.3d at 173–174

(summarizing the facts in that case to state that "it is impossible to escape the conclusion that a

man suffered a serious leg injury over a lost five dollar bill," where an officer pursued and tackled

a man who had picked up and failed to return a five dollar bill dropped by a woman at a bus station,

after the officer ordered him to return the money).   Rather than examining a single aspect of an

incident in isolation, courts are to evaluate the objective reasonableness based on the totality of

circumstances.   *Id.*[5]   Factors to consider in excessive force cases include "the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others,

and whether he is actively resisting arrest or attempting to evade arrest by flight."   *Graham v.*

*Connor*, 490 U.S. 386, 396 (1989).

Resolving factual disputes in Mr. Reid's favor, he posed no threat, offered no resistance,

and disobeyed no verbal commands.   Mr. Reid was suspected of a controlled substance felony

offense.   He was unarmed and less than half Cpl. Wilson's weight.   A reasonable officer in Cpl.

Wilson's position could have believed that Mr. Reid had grabbed a small amount of crystal

methamphetamine.   Mr. Reid was in his living room, with at least two officers present based on

---

[5] The Fourth Circuit has clarified that not viewing events in isolation means that "the events should [not] be reviewed outside the context of the conduct that precipitated the seizure."   *Waterman v. Batton*, 393 F.3d 471, 481 (4th Cir. 2005).   However, "the reasonableness of force employed can turn on a change of circumstances during an encounter lasting only a few seconds," and when the justification for a use of force is eliminated, the use of force must cease. *Id.*

his account.   He had no opportunity to escape or to destroy evidence.   Neither officer gave any commands regarding the crystal.   Any concern that he would ingest the suspected methamphetamine was resolved when Cpl. Wilson grabbed his wrist.   Instead of asking Mr. Reid what the crystal was, telling him to put it down, or instructing him to place his hands behind his back to be arrested, Cpl. Wilson shoved him to the ground with sufficient force to break his jaw.

The Fourth Circuit has considered multiple cases with strikingly similar facts.   In *Rowland v. Perry*, an officer observed Mr. Rowland pick up a dropped five-dollar bill and instructed him to return it.   41 F.3d 167, 171 (4th Cir. 1994).   The woman who dropped the money did not take it back, and the officer followed Mr. Rowland as he walked away.   *Id.*   The officer grabbed Mr. Rowland's collar and jerked him around, yelling at him.   *Id.*   When Mr. Rowland instinctively pulled away, the officer "punched him and threw him to the ground," then "used a wrestling maneuver, throwing his weight against Rowland's right leg and wrenching the knee until it cracked."   *Id.* at 172.   The Fourth Circuit found that the officer was not entitled to qualified immunity, as "a jury could find that no reasonable officer could have believed his conduct to be lawful."   *Id.* at 174.

In *Jones v. Buchanan*, an intoxicated man was being held in a processing room at a sheriff's department and got into a verbal altercation with an officer.   325 F.3d 520, 524 (4th Cir. 2003). When he began to stand up, an officer knocked him to the floor and jumped on his back, placing a knee across his back and neck.   *Id.*   He felt his nose break and saw a puddle of blood.   *Id.*   The Fourth Circuit found that he was not entitled to qualified immunity, reasoning that "mere use of foul language, even a drunk's loud use of such language in a police station, does not justify an

9

objectively reasonable police officer knocking the drunk down, jumping on him, and breaking his nose." *Id.* at 530.

In *Smith v. Ray*, Ms. Smith answered the door to a police officer who asked about an acquaintance.   781 F.3d 95, 98 (4th Cir. 2015).   As she turned back toward the door, the officer reached over her shoulder to slam the door shut, and she took a step back.   *Id.*   The officer then "grabbed her arm with no verbal communication," and she pulled away.   *Id*.   He grabbed her again and threw her to the ground, then jumped on her, "jamming his full weight into her back with his knee, and painfully twisting her right arm behind her back."   *Id.*   She resisted when he attempted to pull her arms out from under her, and he punched her three times in her right side, yanked her arms out and handcuffed her, then yanked her to her feet by her hair "ripping chunks of hair from her scalp."   *Id*. at 99.   The Fourth Circuit again rejected qualified immunity, finding that "[e]specially in light of *Rowland,* no reasonable officer could have believed that, rather than answer the previously compliant young woman's legitimate question concerning why Ray was suddenly grabbing her, Ray was justified in throwing her to the ground, slamming his knee into her back, and wrenching her arm behind her."   *Id.* at 103 (further finding that the plaintiff's resistance during the officer's assault did not justify subsequent use of force).

As in *Jones, Rowland,* and *Smith*, the allegations in this case involve an officer violently slamming a generally compliant suspect to the ground, causing serious injuries, when no such force was needed to gain physical control of the suspect.   The Defendants argue that Mr. Reid's description of his own actions supports a finding that he resisted because he indicated that he did not immediately release the crystal when Cpl. Wilson reached for his hand.   This reasoning ignores Mr. Reid's testimony that Cpl. Wilson had provided no verbal instructions.   A person

10

cannot resist by failing to do something he has not been instructed to do.   Even if he pulled away,

Fourth Circuit precedent is clear that pulling away from being suddenly grabbed by an officer does

not justify escalatory use of force.   Based on Mr. Reid's account, no force beyond the extremely

minimal force necessary to place handcuffs on someone was necessary to effectuate his arrest.   A

reasonable jury resolving factual disputes in Mr. Reid's favor could find that Cpl. Wilson used

excessive force when he slammed Mr. Reid to the ground, breaking his jaw and causing a carpet

burn on his arm severe enough to leave a scar, then punching him in the ribs before handcuffing

him.   While Mr. Reid testified that Cpl. Wilson did not use any additional force after he was

handcuffed, a jury could also consider the officers' refusal to provide medical attention, instead

keeping him in the apartment, then police station, then dropping him off at the jail without offering

any care for his injuries, in evaluating the reasonableness of Cpl. Wilson's actions.   Thus, the

motion for summary judgment should be denied as to Cpl. Wilson.

The Plaintiff's account of events does not assert that Trooper Thompson or Cpl. Jarvis used

any force against him.   Although they were present for portions of events and did not provide Mr.

Reid with medical care, the Plaintiff has not produced evidence that would permit a reasonable

jury to find that they battered him or used excessive force against him.   Therefore, the motion for

summary judgment as to Defendants Thompson and Jarvis should be granted.

The West Virginia State Police is a state agency that cannot be sued for damages under

section 1983.   *Krein v. W. Virginia State Police*, No. 2:11-CV-00962, 2012 WL 2470015, at \*6

(S.D.W. Va. June 27, 2012) (Copenhaver, J.) (citing *Will v. Michigan Department of State Police*,

491 U.S. 58 (1989)).   However, "[u]nder West Virginia law, a plaintiff who alleges the use of

excessive force by a trooper may also have a cause of action against the State Police for vicarious

11

liability."   *Id.* at 7; *see also Maston v. Wagner*, 781 S.E. 2d 936, 955 (W. Va. 2015) ("The State Police is not entitled to qualified immunity because that state agency may be vicariously liable for the wrongful acts of a trooper committed within the scope of the trooper's employment.")   There is no dispute that Cpl. Wilson was acting within the scope of his employment during his interaction with the Plaintiff.   Given the Court's finding that Mr. Reid provided sufficient evidence to permit a reasonable jury to find that Cpl. Wilson used excessive force and committed battery against him, the Court finds that the motion for summary judgment as to the State Police should also be denied.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Defendants' Motion for Summary Judgment* (Document 40) be **GRANTED** as to Trooper Thompson and Cpl. Jarvis and **DENIED** as to Corporal Wilson and the State Police.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:     November 18, 2022

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA